BOYLE-FARRELL LAND COMPANY *v.* CARLETON.

Opinion delivered November 24, 1924.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—In an action for the death of an employee, killed while removing shafting from sheave wheels in defendant's sawmill, evidence *held* to show that defendant's negligence alone was responsible for his death, as the manner of doing the work was wholly within his control, and he adopted a dangerous instead of a safe method of doing same.

Appeal from Grant Circuit Court; *Thomas E. Toler,* Judge; reversed.

*Coleman, Robinson & House,* for appellant.

The deceased was not only guilty of contributory negligence, but he also assumed a perfectly obvious risk which he himself created, by the deliberate adoption of a dangerous method in place of a safe one. 135 Ark. 488; 149 Ark. 270. Appellant was entitled to an instructed verdict.

*Isaac McClellan, R. W. Wilson* and *J. T. Coston,* for appellee.

Appellant, a corporation, is liable for the injury caused by the negligence of one of its servants. C. & M.

Digest, 7144; 109 Ark. 288; 144 Fed. 731.    The negligence
of Smith in knocking out the shaft in the absence of
Carleton, and in disobedience of his orders, is not
imputable to Carleton.    75 Ark. 30.    If it was error for
the court to submit to the jury the questions of assumed
risk and contributory negligence, such error was cured
by giving instructions 3, 4 and 5 for appellant on the
same subject.    67 Ark. 539; 116 Ark. 108; 132 Ark. 450;
151 Ark. 34; 151 Ark. 278.    Appellant is not in position
to claim error in instruction No. 5, since he did not even
plead assumed risk as a defense.    116 Ark. 108.    The
danger was not obvious.    Carleton did not assume the
risk and was not guilty of contributory negligence, unless
he understood and appreciated the dangerous condition.
103 Ark. 61; 82 Ark. 11; 105 Ark. 334; 110 Ark. 456; 108
Ark. 483.    The cases cited by appellant are not in point.
Conceding for the sake of argument that deceased
was negligent in suspending the wheels, the subsequent
negligence of Smith in disobeying his orders would
render appellant liable.    2 Labatt on Master and Servant,
813; 203 U. S. 473; 67 Ark. 8.    Deceased did not assume
the risk of Smith's negligence.    *Great Western Land
Co. v. Barker,* 164 Ark. 587.

WOOD, J.    This is an action by Mrs. Corrie Carle-
ton, administratrix of the estate of her deceased hus-
band, against the Boyle-Farrell Lumber Company, to
recover damages for the alleged negligent killing of E.
R. Carleton while in the employ of the defendant.    She
alleged that Carleton was employed by the defendant as
a mechanic, and was engaged in removing the shafting
from the sheave wheels at the west end of the carriage
platform in the defendant's sawmill; that, being unable
to do so with the tools and equipment at hand, he stopped
work and went for other tools with which to perform the
task; that, during his absence, and without his knowledge
or consent, one Mose Smith, an employee of the defendant,
removed the shafting from the sheave wheels, leaving
them suspended in a dangerous manner, and that, just
as Carleton returned to the point on the ground under-

neath said sheave wheels, they fell, and one of them struck Carleton and injured him so severely that he died about one hour thereafter; that the death of Carleton was due to the negligence of defendant in removing the shaft from the wheels, in the absence of the deceased, and in leaving the said wheels suspended in a dangerous manner after removing the shaft, and in failing to warn the deceased of what had been done and of the dangerous condition in which the sheave wheels had been left. The plaintiff prayed judgment on behalf of the estate in the sum of $5,000, and for the benefit of the next of kin in the sum of $10,000.

The answer denied the allegations of the complaint as to negligence, and set up the defenses of contributory negligence and assumed risk.

Mose Smith testified that he had been employed by the Boyle-Farrell Lumber Company, hereafter called appellant, for eighteen or nineteen years, off and on. He was working for appellant in December, 1922, when Carleton was killed. The mill at that time was shut down for repairs. Witness was working with Carleton, taking down a pair of sheave wheels. The saw-carriage platform is built above the ground about twelve or fourteen feet high. The carriage is pulled by a pair of twin engines and a wire rope feed which winds and unwinds on a drum wheel. There is a little groove cut in the drum. and the rope winds and unwinds off of that groove, and the sheave wheels have a groove cut in them, and the wire cable works back and forth in this groove. There were four sheave wheels, two at each end. They were taking down the two larger wheels on the rear end. At first Carleton was on the upper floor, sitting on the grand stand, a place about two and a-half feet high, and witness was down underneath the floor, driving the shaft out of the wheels. Carleton was looking down at witness. Witness was standing on a ladder, the foot of the ladder resting on the ground and the top on the rim of the sheave wheels. Witness was driving the shaft out of the hub of the wheels with a sledge-hammer. Carleton said he

was going to take the wheels down. Witness drove the shaft up to the hub of the wheel, when Carleton said, "Mose, wait a minute. I will go to the shop and get you something to drive it out with." After witness drove it up to the hub, he could not hit it any more with the sledge-hammer, and at this point Carleton said, "Wait, and I will go to the shop and hunt you a piece of iron to drive it out with." Carleton got down from where he was sitting and went to the shop to get the piece of iron. He wasn't gone over two, three, or four minutes. While he was gone, witness looked down on the ground and saw a piece of iron, which witness got and drove the shaft out. Just as he drove it out, it fell on the ground right down under the wheel. Carlton walked in the back end of the mill, about the time witness drove it out, and said to witness, "You have got it out, have you?" and witness replied, "Yes sir." Carleton then threw the piece of iron down that he had to drive the shaft out with. After witness drove the shaft out, he went down the ladder. As he was coming down Carleton was walking up. As witness stepped off the ladder Carleton walked right up under the wheels, and reached down to get a key that bounced out of the shaft when it fell on the ground. As Carleton reached down, to pick up the key, witness heard a noise, and said, "Look out!" and witness jumped right out through a hole that was in the wall. The wheels came right straight down. They were hung four or five feet above witness' head. As they came down one of the wheels brushed the sledge-hammer off of witness' shoulder and drove it in the ground. The other wheel fell on Carleton. It all happened in a second.

On cross-examination witness explained that the two wheels were side by side, just as near together as they could get. They had a hub like a wagon hub, and these two hubs rubbed together. There were four or five inches between the rims. The piece of iron witness used to drive the axle out with was about the same kind that Carleton went to get. Either piece would answer the same purpose. Witness was asked this question:

"Q. He said for you to wait and 'I will get you something?' A. Yes sir. Q. Did you understand he wanted you to quit work, if you had a piece there to drive it out with? A. No sir; if I had a piece to drive it out with, I didn't understand he wanted me to quit, but I didn't have anything to drive it out with but the sledge-hammer at that time, and he didn't see anything. I don't suppose, if he had he would have told me to get it, and I didn't see anything or I would have told him that I saw a piece down there that would answer for that purpose; but I didn't see anything at the time he told me to wait."

The witness continued his testimony, and stated that, just as Carleton walked in the rear end of the mill, witness hit the last lick, and the shaft fell out. Witness then put his sledge-hammer on his shoulder and came down the ladder, and, just as witness stepped off the ladder on the ground, Carleton reached down and picked up a key, when witness heard the noise, and jumped, as before stated. Carleton was straightening up, but hadn't got straight. Before Carleton got up to witness, he said "I see you have it out," and when he said that he threw down the piece of iron he had. He was then about twenty feet away. Witness and Carleton were standing together, nearly under the wheels. Witness explained how the wheels were hung by saying that Carleton took a piece of wood and put it through the rim of both wheels (indicating by using the arm of a chair), either wheel resting on the end of the piece of wood. They had a tackle chain which they wrapped around the block on the ends of which the wheels were suspended. When the chain was wrapped around the block two or three times there wasn't much of the rim over the end of the block. Witness was working as a helper under Carleton's direction. Carleton was the master mechanic. Witness never thought about the wheels falling, or he would not have gone on the ladder. Witness supposed Carleton could have wrapped the chain around the spokes and through the rims and lifted the wheels just as easy as he could have done with the block. If he had done that, he

would not have had the block. When witness knocked on the shaft with the sledge-hammer, he never paid any attention to the shaking part of it. He was after driving the shaft out, and it was pretty hard to drive it, and witness "might have shook it right smart, because it was hard." He had to stop and rest once or twice while he was driving it out. After witness drove the shaft out with the piece of iron, he laid it on the window sill. Witness further explained that, when the wheels fell, Carleton was not standing directly under the wheels. He was standing right at the side of it. The wheel, in falling, did not hit the ground, but hit a big piece of timber and fell over on Carleton.

R. E. Farrell, one of the owners of the mill, testified, among other things, that Carleton was in the employ of the appellant in charge of its repair work. He had full charge of all the machinery, locomotives, plants and everything, and had about twenty men under him, among them Mose Smith. Witness picked up the block on which the sheave wheels were suspended, and pointed out the marks of the chain around the block, and stated that the wheels were seven feet eight inches in diameter, and that the floor was fourteen feet from the ground; that it was nine feet from the center of the shaft to the ground; that the wheels were keyed on to the shaft to keep them from slipping back and forth and to hold them steadily on the axle; that the wheels extended above the floor about two inches. The opening through which they extended above the floor was about seven inches wide and three feet long. The wheels weighed about 1,200 pounds each. Carleton raised the wheels with a chain-block which would lift 2,500 or 3,000 pounds, and could be operated by one man. Carleton could have put the chain right around the sheave wheels to keep them from slipping on the block, or he could have used a longer piece of timber. Any of those methods would have been safer than the method he used, which was the most dangerous he could use for suspending the wheels while removing the shaft and pin.

The above states all the material testimony bearing on the issues of negligence, contributory negligence and assumed risk. The court submitted these issues to the jury under instructions which, in our view of the case, it becomes unnecessary to set forth.

Among other prayers for instructions, the appellant presented the following: "You are instructed to return a verdict for the defendant company." The court refused this prayer, and the appellant duly excepted to the ruling of the court. The appellant also presented several other prayers for instructions to the effect that, if the jury believed from the evidence that the manner of suspending the sheave wheels was dangerous, and that the deceased knew and appreciated the danger, or, by the exercise of reasonable and ordinary prudence, could and should have known, then he assumed the risk of being injured thereby, and, if the jury found he was injured thereby, they should return a verdict in favor of the appellant. The court refused these prayers, to which the appellant duly excepted.

Another prayer for instruction was to the effect that, if the jury found Carleton, upon his return, saw the shaft was out of the wheels, before he went near them, and while he was still fifteen or twenty feet away, then the driving of the shaft from the wheels was not the proximate cause of Carleton's injury. The court refused this prayer, to which the appellant duly excepted.

The jury returned a verdict in favor of the appellee for the benefit of the estate in the sum of $2,500 and for the benefit of the next of kin in the sum of $5,000. Judgment was entered in favor of the appellee in accordance with the verdict, from which is this appeal.

The appellee contends that the appellant is liable on the ground that its employee, Mose Smith, in the absence of Carleton, his foreman, and in disobedience of his orders, drove out the shaft, and that, in so doing, Smith was guilty of an act of negligence which was the proximate cause of the death of Carleton, and which act of negligence rendered the appellant liable under § 7144,

Crawford & Moses' Digest. To sustain this contention the appellee must rely upon the testimony of Mose Smith, who was the only eye-witness to the injury. After a careful consideration of his testimony, we are convinced, in the first place, that there was no act of negligence on the part of Mose Smith. When Mose Smith had driven the axle to the hub of the wheel, Carleton said, "Mose, wait a minute, I will go to the shop and get you something to drive it out with." Mose stated that he didn't understand that Carleton, by this direction to wait, wanted him to quit driving the axle, but that, as he didn't have any iron to drive it further, his only purpose in wanting him to quit was to get the piece of iron, and, as he saw a piece of iron near that would answer the same purpose, he used that while Carleton was away. The iron witness used was substantially the same kind of iron that Carleton brought back, and served the same purpose as that would have done. So, during the absence of Carleton, Mose Smith didn't change the manner that had been adopted by Carleton to drive out the axle. He used the same method and practically the same means that would have been used had he waited for Carleton's return. Manifestly, the purpose of Carleton in telling Mose to wait was not to change the method that he had adopted for driving out the axle, but only to procure an instrument by which it might be done in the same manner that he had adopted. If Mose, during the absence of Carleton, had changed the method or the means of driving out the axle, the case would have been different, but Mose was pursuing the same method and using practically the same means that he would have used had Carleton been present when the axle was driven out. Mose was doing the work in the manner Carleton had planned and directed that it should be done.

We do not find in this testimony any evidence whatever to justify the conclusion that Mose disobeyed the orders of his superior, and that he was negligent.

In the second place, even if we are mistaken in holding that the undisputed evidence shows that there

was no negligence on the part of Mose Smith, and if it could be said that he was negligent in not waiting for the return of Carleton, still the undisputed evidence shows that his negligence in this respect was not the proximate cause of Carleton's injury. Carleton walked into the back end of the mill about the time Mose drove the axle out, and said, "Mose, you have got it out, have you?" and Mose replied, "Yes sir." Mose was then coming down the ladder, and Carleton walked up right under the wheels as Mose stepped off the ladder, and reached down to get the key that was in the shaft when the shaft fell on the ground, and, as Carleton reached down, the wheels fell, and one of them struck him. The undisputed testimony shows that Carleton knew, soon after he returned with the piece of iron, and before he went under the wheels, that the axle had been driven out. Mose stated that Carleton was about eighteen or twenty feet away when he said, "I see you have got it out," and he replied, "Yes sir." With full knowledge of this fact, Carleton walked up and stepped under the suspended wheels, and stooped to pick up the key, when the wheels fell and injured him as he was straightening up.

The testimony unquestionably shows that the manner adopted for suspending the wheels and removing the axle was negligent, but the manner of doing this repair work was wholly within the control of Carleton himself, and it was his negligence, and his negligence alone, as we view the undisputed evidence, that was the direct and proximate cause of his death. By the exercise of ordinary care upon his part he could, and should, have planned a safer method for suspending the wheels and removing the axle, which the proof shows could have been adopted; but, after adopting this dangerous method, and after the axle had been driven out according to that method, he had knowledge of this fact, and could and should have known, in the exercise of ordinary care on his part, that it was dangerous in the extreme to walk under the suspended wheels. The danger was so obvious, at least to one of his experience, that

there is no room for any conclusion in the mind of any reasonable person other than that Carleton's own negligence was the direct and proximate cause of his injury and death. The undisputed evidence shows that the wheels were suspended in such a manner that the least vibration or oscillation from the slightest difference in weight, or from other cause, would make them slip from the short 2 x 4 on which they were suspended. Carleton had full knowledge of these conditions. The danger was so imminent and obvious that Carleton, by the exercise of ordinary care, could and should have avoided it. The court therefore erred in refusing appellant's prayer for a directed verdict and in not declaring as a matter of law that the direct and proximate cause of the injury to Carleton was his own negligence.

The judgment is reversed, and, inasmuch as the cause has been fully developed, it will be dismissed.

HUMPHREYS, J., dissenting.